# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Scarlett T.,**
**Respondent Below, Petitioner**

**vs.)  No. 21-0528** (Marion County 20-D-AP-1)

**Jay T.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Scarlett T. appeals the circuit court's June 7, 2021, order affirming the family court's order granting Respondent Jay T.'s petition for modification of the parties' parenting plan and finding petitioner in contempt of the divorce decree requiring her to keep respondent informed of various events in the parties' children's lives.[1] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. Proc. 21.

The parties, who were married for approximately fourteen years prior to their divorce, are parents to four children, and they had been operating under a mediated parenting plan,[2] which was incorporated into their 2014 final divorce decree.[3] Respondent petitioned to modify that parenting plan after discovering messages from petitioner to one of the parties' children

---

[1] Petitioner appears by counsel Amy L. Lanham, respondent appears by counsel Gabrielle R. Flanagan and Ashley Joseph Smith, and the children's guardian ad litem, Clarissa M. Banks, appears. We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. Proc. 40(e).

[2] This plan provided that the children were to be with respondent every other week from Tuesday after school (or 4:00 p.m.) until Thursday at 8:00 a.m., and on the alternate week, the children were to be with respondent every other Friday after school (or 4:00 p.m.) until Sunday at 4:00 p.m. The plan provided further that respondent would enjoy six additional days when the children were not in school. All other times, the children were to be with petitioner.

[3] Two of their four children have reached the age of majority, so the parenting plan at issue pertains only to the parties' two youngest children.

encouraging the child to "rock [the] boat" while respondent was on vacation with the children and reprimanding the child for having positive interactions with respondent.[4] Respondent also filed a petition for contempt, alleging that petitioner violated the divorce decree in various ways, including by failing to keep him informed of the children's activities and medical treatment, disparaging him in an attempt to negatively influence the children's perception of him, and scheduling activities for the children during his parenting time.

Before hearing these petitions, the family court appointed a guardian ad litem ("GAL"), and the parties also began operating under a trial plan affording each equal parenting time. At the hearing on these petitions, many witnesses testified, including the children's psychologist, the parties, the GAL, the parties' two eldest children, and friends or school personnel who were familiar with the family's dynamics and parties' respective parenting styles. Following its consideration of the evidence adduced, the family court adopted the GAL's recommendation that the parties remain on the fifty-fifty parenting plan, finding it to be in the children's best interests. The family court made its modification under West Virginia Code § 48-9-401(b), which provides that "[i]n exceptional circumstances, a court may modify a parenting plan if it finds that the plan is not working as contemplated and in some specific way is manifestly harmful to the child[ren], even if a substantial change of circumstances has not occurred." The family court found that petitioner "engage[d] in behavior designed to interfere with the [respondent's] relationship with his children. Specifically, the text messages wherein the [petitioner] attempts to get the children to make comments and cause problems during the [respondent's] parenting time and then directing the children to delete the messages." Further, the family court found that petitioner "repeatedly failed to provide information to the [respondent] regarding the activities of the children and attempted to frustrate the [respondent's] parenting time by not advising him of the children's activities, illnesses, etc." Accordingly, the family court found that

> [t]he children are being harmed by the current parenting plan because the [petitioner] is attempting to alienate the children from the [respondent] through her actions with regard to the text messages, failure to provide the father information about the children's health and activities, and refusal to communicate with the [respondent] about the children.

And the family court determined that the modification

> attempts to remedy the harm to the [f]ather/[c]hildren relationship by giving the children a consistent (and longer consecutive period of time) with the father[,]

---

[4] Since the parties' divorce, respondent has remarried, and his new wife was also on vacation with respondent and the children. The messages from petitioner, addressed to her son who was no older than fourteen, were laden with expletives and referred to respondent's wife as a "f[*]cking b[*]tch," asked the son if he told respondent and his wife that he did not "want to go and to F off," and repeatedly demanded that the child "make it very clear . . . that u . . . hate it there and with them and want to go home."

[t]hereby enabling the [f]ather to be a presence in the life of the children without the hostility between the parents causing fear and stress to the children.

The family court also granted respondent's petition for contempt, finding that petitioner had acknowledged at the hearing that she failed to keep respondent informed and that she "engag[ed] in extreme mental and emotional abuse of the children and influenc[ed] them to think negatively of their father." Petitioner appealed to the circuit court, which found no error. The circuit court also declined to award petitioner her attorney's fees, finding that an award was "unwarranted because . . . the facts of this case [do not] meet the appropriate reasons for attorney[']s fees as outlined in West Virginia Code §48-1-305."

Petitioner raises five assignments of error on appeal, but they can be distilled into two issues: whether the family court erred in modifying the parties' parenting plan, and whether the family court erred in failing to award petitioner her attorney's fees. Petitioner claims error in the modification because the problematic messages to her son were a "one-time occurrence," respondent behaved poorly[5] and failed to exercise all his parenting time, and she had excuses for failing to keep him informed. Petitioner also argues that the minor children expressed a preference for returning to the original parenting plan that afforded respondent less time, and she claims that there was no evidence that her behavior was manifestly harmful to the children.

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

We find no error in the family court's modification of the parties' parenting plan to afford respondent equal parenting time. Petitioner's efforts to highlight respondent's failures or bad behavior while downplaying her own amount to nothing more than a request that this Court reweigh evidence and make findings different from those made by the family court. But this Court cannot set aside a lower court's findings "unless clearly erroneous," and a finding is clearly erroneous only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). Also, this Court "must affirm a finding if the [lower] court's account of the evidence is plausible in light of the record viewed in its entirety." *Id.* The

---

[5] Petitioner maintains that respondent was physically and verbally abusive toward her and the children. Of the instances of abuse testified to, Child Protective Services ("CPS") investigated all but one and did not substantiate the allegations. The remaining incident allegedly occurred after CPS's investigation. The police were called, they investigated the incident, but they took no action against respondent. Notably, petitioner does not argue that respondent presents a danger to his children such that he should be prevented from seeing them. To the contrary, petitioner testified that she encourages the children to spend time with their father.

family court expressly found that the original parenting plan was not working as contemplated and was manifestly harmful to the children because it facilitated petitioner's efforts to alienate the parties' children from their father. Petitioner has failed to demonstrate that these findings were clearly erroneous or that the family court abused its discretion by modifying the parenting plan to ameliorate the harm. Petitioner has likewise failed to establish that modification was erroneous simply because it was not in accordance with the minor children's wishes. West Virginia Code § 48-9-401 provides that a court "*may* modify" (emphasis added) a parenting plan to accommodate a child's preference, and this Court has authorized courts "to give that preference such weight as circumstances warrant." Syl. Pt. 7, in part, *Garska v. McCoy*, 167 W. Va. 59, 278 S.E.2d 357 (1981). The family court considered the children's preferences, but it determined that affording each party equal parenting time was in the children's best interests to address the harm caused by petitioner's conduct.

We also find no error in the circuit court's denial of petitioner's request for attorney's fees. Petitioner argues that the circuit court should have addressed her request under Syllabus Point 4 of *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996), in which this Court outlined the factors a court should consider in determining whether to award attorney's fees in divorce actions.[6] Invoking some of those factors, petitioner argues that respondent earns more money, that his behavior was "more horrific and appalling," and that her attorney's fees are reasonable. Petitioner has failed to support her claim regarding the parties' respective financial positions with a citation to the record, has merely concluded without elaboration that her attorney's fees are reasonable, and has failed to account for the consideration of the parties' behavior undertaken by the fact finder. Furthermore, petitioner's position ignores that she did not receive "beneficial results," a factor to be considered under *Banker. Id.* As a result, she has failed to demonstrate that her attorney's fees should have been awarded under *Banker. See id.* at 538, 474 S.E.2d at 468, Syl. Pt. 4, in part ("[A]n award of attorney's fees rests initially within the sound discretion of the family [court] and should not be disturbed on appeal absent an abuse of discretion.").

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** December 6, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison

---

[6] Although the test set forth in Syllabus Point 4 of *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996), is "specifically limit[ed]" to divorce actions, we have also "recognized that the *Banker* factors 'are equally relevant and applicable to proceedings stemming from, although following, the actual divorce.'" *Paugh v. Linger*, 228 W. Va. 194, 200, 718 S.E.2d 793, 799 (2011) (citation omitted).

4

Justice Elizabeth D. Walker
Justice William R. Wooton
Justice C. Haley Bunn

**DISSENTING:**

Justice Tim Armstead

Armstead, J., dissenting:

  I would have set this case for oral argument to thoroughly address the errors alleged in this appeal. Accordingly, I respectfully dissent.